# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **KIMBERLY LANDRUM f/k/a KIMBERLY SHEPARD,** *Plaintiff*, v. **ALLSTATE INSURANCE COMPANY,** *Defendant.* | **CIVIL ACTION NO. 5:18-cv-00458-TES** |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kimberly Landrum's vacation home in Milledgeville, Georgia, was damaged by water in early March of 2018. Defendant Allstate Insurance Company, with whom Plaintiff held a homeowners insurance policy, refused to cover the damage, leading to the instant dispute. Allstate removed the action to this Court from the State Court of Baldwin County, Georgia, and now moves for summary judgment. Because Allstate properly denied coverage, its motion is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff purchased a homeowners insurance policy from Allstate in 2017 that covers "sudden and accidental direct physical loss" to her Milledgeville, Georgia property. [Doc. 1-1, pp. 11, 29]. The Policy explicitly excludes coverage for

> [s]eepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

> a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
>
> b) from within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

[*Id.* at 31].

On April 4, Plaintiff received a call from a neighbor informing her that the Milledgeville Water Department had left a note on her door. [Doc. 13-1, ¶ 3]. Plaintiff arrived at the property later that day and discovered water "spewing out from under the sink in the kitchen." [Doc. 10-1, K. Landrum Depo., pp. 30:17—31:4]. There was approximately a half inch of water covering the main floor of the house, and some had seeped into the basement. [Doc. 13-1, ¶ 6]. Plaintiff turned off the water supply to the house and later determined that the water came from a supply line running from the kitchen sink to the refrigerator ice maker. [*Id.* at ¶ 5]; [Doc. 10-1, K. Landrum Depo., p. 35:17–23]. According to the Milledgeville Water Department, the leak began at 4:00 p.m. on Sunday, March 11, 2018, and ended at 5:00 p.m. on Wednesday, April 4, 2018, with a total of "[a]pproximately 5 thousand gallons of water" running continuously at a rate of nine to ten gallons per hour for that 25-day period. [Doc. 10-1, K. Landrum Depo., p. 210]; [Doc. 13-1, ¶¶ 22, 23].

One day after discovering the spewing water, Plaintiff called Allstate to report the damage. [Doc. 13-1, ¶ 7]. Allstate adjuster Thomas Specht inspected the property on April 16, 2018 and determined from examining mold growth that water had been coming out

of the supply line for enough time to deny Plaintiff's claim. [Doc. 10-2, T. Specht Depo., pp. 25:8–13, 29:25—30:9, 42:13—43:8]. Allstate sent Plaintiff a formal denial letter the following day, citing subsection (a) of the above-quoted Policy provision and explaining that the loss was "specifically excluded from coverage." [*Id.* at p. 92].

In her complaint, Plaintiff claims that the water damage to her property is covered under the Policy and that Allstate's denial of coverage constituted a bad-faith breach of the Policy. [Doc. 1-1, ¶¶ 24–27, 32]. Allstate now moves for summary judgment, arguing that the Policy clearly excludes coverage, and the Court agrees.

## **DISCUSSION**

### A. **Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant may

(1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

In insurance disputes under Georgia law, the burden first rests with the insured to show that its claim falls within the purview of the insurance policy. *Travelers Home & Marine Ins. v. Castellanos*, 773 S.E.2d 184, 186 (Ga. 2015) (quoting *Castellanos v. Travelers Home & Marine Ins.*, 760 S.E.2d 226, 232 (Ga. Ct. App. 2014) (McMillian, J., dissenting)) ("[A]n insured claiming an insurance benefit has the burden of proving that a claim falls within the coverage of the policy."). Once the insured's burden is met, the burden shifts to the insurer to prove that a policy exclusion applies to the facts of the case. *Haulers Ins. v. Davenport*, 810 S.E.2d 617, 619 (Ga. Ct. App. 2018) (quoting *Interstate Life & Accident Ins. v. Wilmont*, 180 S.E.2d 913, 914 (Ga. Ct. App. 1971)) ("Where the insurer seeks to invoke

an exclusion contained in its policy, it has the burden of proving the facts come within the exclusion.").

B. **Policy Language**

The parties primarily dispute whether the Policy's exclusion of "seepage, meaning continuous or repeated seepage or leakage," is ambiguous. [Doc. 1-1, p. 31]. Plaintiff argues that this circular definition renders "seepage" *per se* ambiguous. Although the Court agrees that defining a word with the same word is both linguistically improper and ultimately useless, it does not make this provision ambiguous under Georgia law.[1] An ambiguity only exists where

> the words used in the contract leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations. Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.

*Coleman v. Arrington Auto Sales & Rentals*, 669 S.E.2d 414, 416 (Ga. Ct. App. 2008) (quoting *Capital Color Printing v. Ahern*, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008)).

The definition of seepage in this case is not open to various interpretations, as the Policy clearly limits it to its plain meaning and the plain meaning of "leakage." The

---

[1] *But see Brewington v. State Farm Mut. Auto. Ins.*, 45 F. Supp. 3d 1215, (D. Nev. 2014) (A circular definition, in which "the term being defined is used within its own definition" is "inherently ambiguous as [it] require[s] additional information outside the definition to actually define the term being defined."). Under Georgia law, however, where a circular definition can be resolved with the plain and ordinary meaning of a term, which may require a party to consult a dictionary, the term is not ambiguous. *See Coleman*, 669 S.E.2d at 416, *infra*.

5

ordinary meaning afforded to "seepage" is "percolation or oozing of water or fluid,"[2] "a process in which a liquid flows slowly out of a hole or through something,"[3] or the process of flowing or passing "slowly through fine pores or small openings."[4] The ordinary meaning afforded to "leakage" is "admission or escape of water or other fluid through a hole in a vessel, etc.,"[5] the condition of "escap[ing] from a hole or crack in a pipe or container,"[6] or the act or process or an instance of "enter[ing] or esacp[ing] through an opening usually by a fault or mistake."[7]

Although Plaintiff seeks to limit these ordinary meanings to water that is "moving slowly" through an opening, [Doc. 13, p. 14], the Policy's exclusion of both seepage, which in some definitions includes a speed component, and leakage, which does not include a speed component, clearly indicates the intention to exclude *any* escape of water, including that which is slow-moving and that which is not. Thus, it cannot reasonably be

---

[2] *Seepage*, Oxford English Dictionary Online, http://www.oed.com/view/Entry/174831 (Oct. 9, 2019).

[3] *Seepage*, Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/seepage (Oct. 9, 2019).

[4] *Seepage* and *Seeping*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/seepage and https://www.merriam-webster.com/dictionary/seeping (Oct. 9, 2019).

[5] *Leakage*, Oxford English Dictionary Online, http://www.oed.com/view/Entry/106657 (Oct. 9, 2019).

[6] *Leakage* and *Leaking*, Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/leakage and https://dictionary.cambridge.org/us/dictionary/english/leak (Oct. 9, 2019).

[7] *Leakage* and *Leaking*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/leakage and https://www.merriam-webster.com/dictionary/leaking (Oct. 9, 2019).

disputed that the loss to Plaintiff's property arose from seepage as it is defined in the Policy and as that definition is informed through ordinary meaning.

C. **Bifurcation of Damages**

Plaintiff next argues that Allstate is liable for the damages that occurred during the first 13 days of the leak, despite the application of the Policy seepage exclusion. This Court has already determined that at least 14 days of seepage or leakage is required to trigger an exclusion, like the one here, for seepage or leakage "over a period of weeks, months, or years." *Taylor v. Foremost Ins.*, No. 5:15-CV-164 (LJA), 2017 WL 8777469, at *9 (M.D. Ga. Aug. 31, 2017). Extrapolating from *Taylor*, Plaintiff claims that Allstate is required to bifurcate the damages to the property and provide coverage for the portion of the damages that arose from the first 13 days of the 25-day period of seepage, since a 13-day leak would, as a matter of law, occur over a period of days and not weeks. But the leak in *Taylor* lasted only eight days as opposed to 25. *Id.* Thus, *Taylor* provides no guidance on the bifurcation of damages that occur from a leak that lasts over 13 days.

The two other cases Plaintiff cites are equally unhelpful to her case. In *Wheeler v. Allstate Insurance*, the court found a triable issue of fact where the homeowner plaintiff sought to recover for damage that was "complete within the first week of flooding," even though the flooding occurred for over two months, because the plaintiff's expert could determine which damages resulted from the first week of the loss and which did not. 687 F. App'x 757, 767–68 (10th Cir. 2017). Likewise, in *Hicks v. American Integrity Insurance Co.*

*of Florida*, the court granted summary judgment to the plaintiff homeowner where his expert was able to "calculate the amount of damage to [the] home within the first thirteen days of the leak." 241 So. 3d 925, 927 (Fla. Dist. Ct. App. 2018).

Unlike the evidence in *Wheeler* and *Hicks*, none of the evidence in this record establishes that the damages were caused by less than 25 days of leakage. The damages estimate Plaintiff relies on does not differentiate between damages that resulted from the first 13 days of the leak and those that resulted from the other 12 days of the leak, and there is nothing in the record to suggest that such a differentiation has been, or even can be, made. [Doc. 10-1, K. Landrum Depo., pp. 76:7–12]; [Doc. 13-2, Ex. 1]. Moreover, Plaintiff admits that her damages result from a "water loss that occurred at the Property between March 11, 2018 and April 4, 2018" and not from a shorter period of that loss. [Doc. 13-2, p. 1].

In the absence of evidence to create a genuine issue of fact as to whether the damages occurred from the first 13 days of the 25-day leak, Plaintiff cannot meet her burden on summary judgment as to this issue, and there is no dispute that the Policy excludes coverage. *See Porter*, 461 F.3d at 1320 (A non-movant must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.").

D.  **Coverage for Mold Damage**

Finally, Plaintiff argues that Allstate is liable for mold remediation arising from the water damage. However, the Policy clearly states that Allstate is only required to pay for mold remediation arising from a covered water loss. [Doc. 1-1, p. 21].[8] Because the Court has already determined that the water loss Plaintiff suffered is not covered by the Policy, mold resulting from that loss is also not covered. Accordingly, Allstate is not obligated to pay for any of Plaintiff's water damages.

## CONCLUSION

The Policy unambiguously excludes coverage for the damages arising from the 25-day leak on Plaintiff's property.[9] Accordingly, Allstate's Motion for Summary Judgment [Doc. 10] is **GRANTED**.

**SO ORDERED**, this 9th day of October, 2019.

s/Tilman E. Self, III
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**

---

[8] *"In the event of a covered water loss* under Coverage A—Dwelling Protection . . ., we will pay up to $10,000 for mold, fungus, wet rot or dry rot remediation." [Doc. 1-1, p. 21] (emphasis added).

[9] Given that there is no coverage as a matter of law, Plaintiff's claim for bad faith must also be dismissed.